IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

UNITED STATES OF AMERICA, )
)
)
vs. ) Case No. 8:08-CR-555
)
**STEVE C. GARREN** )
)
Defendant. )
________________________________ )

**GOVERNMENT'S MOTION TO EXCLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING**

The United States of America, by and through undersigned counsel, hereby submits its motion to exclude the proposed testimony of defense experts Dr. Stephen F. Curran and Dr. Marc Green. The law prohibits either expert from testifying as to his opinion or offering any inference as to whether the Defendant had the requisite intent to strike Marvin Grant with his patrol vehicle or from offering testimony that would compel a conclusion as to the Defendant's lack of criminal intent. Additionally, Dr. Curran is clearly prohibited from testifying that the Defendant's admissions that he committed the crime were false.

Alternatively, the government requests that this Court hold a *Daubert* hearing to determine whether the proposed testimony will concern scientific, technical, or other

specialized knowledge that will assist the jury to understand the evidence or to determine a fact in issue.

## FACTUAL BACKGROUND

At approximately 10:40 p.m. on June 24, 2007, the Defendant, acting in his capacity as a South Carolina Highway Patrol trooper, attempted to stop Marvin Grant for speeding in Greenwood, South Carolina. The Defendant pursued Grant's vehicle until Grant stopped, got out of his vehicle and fled on foot. Grant ran down a residential street as the Defendant drove his patrol vehicle behind him. The Defendant, continuing in his patrol vehicle, pursued Grant as he ran down the left side of the street. This portion of the pursuit was recorded by the Defendant's dashboard camera and the recording clearly shows the Defendant driving behind Grant, Grant crossing the street in front of the Defendant, the Defendant steering his car directly at Grant, and the Defendant striking Grant with the right front of the patrol vehicle. Grant was knocked off his feet and to the side of the road, out of the camera's view. Grant continued to run and was not immediately apprehended. Grant, who was injured and suffered considerable pain, turned himself into the Greenwood County Sheriff's Office the next morning but was never charged with any offense related this incident. In addition to the footage of the collision, approximately seven minutes after striking Grant, the video recording shows the Defendant driving to a nearby location and meeting with other police officers including GCSO Deputy Derrick Smith. Immediately upon arriving at that location, the Defendant,

while still seated in his patrol vehicle, said "Hey, I nailed the ___ out of him. I nailed the fuck out of him when he hit that damn field . . . he went flying up in the air. . . ." In response to these statements, Deputy Smith asked "You hit him?" and the Defendant replied, "Yeah, I hit him. I was trying to hit him." At some point later, while searching for Grant, the Defendant repeated to GCSO Brad Ware that he purposely struck Grant with his patrol vehicle.

DISCUSSION

*Dr. Steve Curran*

On September 14, 2008, the Defendant noticed the government that he intends to call Dr. Steve Curran, a psychologist, to testify as to his knowledge and expertise regarding "law enforcement stress and critical incident response." According to the Defendant, Dr. Curran "has not issued a written report regarding his findings" and the Defendant provided no exhibits or supporting materials related to Dr. Curran's proposed testimony. The Defendant offers that Dr. Curran will testify about two specific aspects of the evidence – the Defendant's actions and the Defendant's statements.

First, Dr. Curran "is expected to testify regarding law enforcement reactions to critical incidents and his opinions regarding the actions of the defendant and other persons on the scene." Without the benefit of any more specific information from the Defendant, the government assumes that Dr. Curran would testify that at or near the time the Defendant struck Grant with his patrol vehicle, "law enforcement stress" and/or

"critical incidents" affected the Defendant's mental state or mental condition. If this assumption is true, Dr. Curran will be subject to the provisions of Federal Rule of Evidence 704(b). The rule prohibits any expert witness from stating ". . . an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged."

The Fourth Circuit interpreted Fed.R.Evid. 704(b) in *United States v. Fowler*, 932 F.2d 306 (4th Cir. 1991). Fowler was indicted for acquiring and disseminating classified government information. At trial, Fowler attempted to call an expert witnesses to testify that he did not intentionally commit a crime but rather was confused by vague government regulations. As in *Fowler*, this Defendant is charged with a specific intent crime and his intent, therefore, is an element of the crime and the ultimate issue for the jury to decide. In *Fowler*, the Fourth Circuit clearly ruled that Rule 704(b) bars any expert testimony to the extent that the expert would venture an opinion that the defendant did not have the specific intent to commit a crime. *Id.* at 315.

Defendant further states that Dr. Curran would also testify that the Defendant's "statements made following this incident were bravado and [were made] as part of a situational stress reaction." The proposed testimony of Dr. Curran regarding the truth of the Defendant's admissions is clearly not permissible. A survey of Fourth Circuit law reveals no reported instance in which an expert was allowed to testify that a defendant's admission that he committed a crime was false. Likewise, the government would never

be allowed to introduce expert testimony to say that the defendant's admission that he committed a crime should be believed.

Federal Rule of Evidence 702 contemplates testimony that will assist the trier of fact to understand the evidence or to determine a fact in issue. Dr. Curran's testimony that the Defendant's admissions of his intention to strike Grant with his patrol vehicle should be discounted as "bravado"will not assist the jury to understand the statement or determine the facts. Juries exist to evaluate the credibility of evidence and determining the sincerity and credibility of an admission by a defendant is a factual issue that juries regularly and capably decide. The Fourth Circuit has specifically held that no expert witness will be allowed to render his opinion as to issues that are regularly decided by juries. *Id*. Additionally, allowing Dr. Curran to testify that the Defendant's admissions that he intended to strike Grant were untrue would compel the conclusion that the Defendant did not possess the requisite intent to commit the crime. Federal courts have specifically interpreted Rule 704(b) to prohibit expert testimony that compels a conclusion about a defendant's intent. *See United States v. Finley*, 301 F.3d 1000, 1015 (9th Cir. 2002) (Defendant charged with interfering with the administration of the Internal Revenue Service and bank fraud; "Expert testimony that compels the jury to conclude the defendant did not possess the requisite mens rea does not "assist the trier of fact" under Rule 702 because such testimony encroaches on the jury's vital and exclusive function to make credibility determinations."); *United States v. Campos*, 217 F.3d 707, 711 (9th Cir.

2000) (Fed.R.Evid. 704(b) rationale applied to polygraphers as expert witnesses).

*Dr. Marc Green*

On September 14, 2008, the Defendant noticed the government that he intends to call Dr. Marc Green, a "visual expert," to testify as to his knowledge and expertise regarding "the reaction time of the Defendant during the incident" and "that this was an unavoidable incident." According to the Defendant, Dr. Green "has not issued a written report regarding his findings" and the Defendant provided no exhibits or supporting materials related to Green's proposed testimony.

The government concedes that Dr. Green's testimony as to a human's ability to react to certain circumstances may be admissible but the conclusion that the Defendant's collision was "unavoidable" is improper expert testimony. If Dr. Green is allowed to testify that the collision between the Defendant's patrol vehicle and Grant was accidental and, therefore not the intention of the Defendant, the expert's testimony would compel a conclusion as to the Defendant's lack of criminal intent. As aforementioned, federal courts have held that expert testimony that compels the jury to conclude the defendant did not possess the requisite criminal intent does not "assist the trier of fact" under Rule 702 because such testimony substitutes the expert's opinion for the jury's role in determining criminal intent. *Finley* at 1014 - 15. See also *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("Generally, the use of expert testimony is not permitted if it will usurp . . . the role of the jury in applying that law to the facts before it. When an expert undertakes

to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.")

CONCLUSION

Fed.R.Evid 704(b) and federal precedent prohibit the proposed testimony of Defendant's experts, Dr. Steve Curran and Dr. Marc Green, and the testimony should be excluded. In the alternative, the government requests that the court conduct a *Daubert* hearing to determine whether the proposed expert testimony will concern scientific, technical, or other specialized knowledge that will assist the jury to understand the evidence or to determine a fact in issue.

Respectfully submitted,
KEVIN F. MCDONALD
FIRST ASSISTANT UNITED STATES ATTORNEY

*s/ Alston C. Badger*
Alston C. Badger
Assistant U.S. Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
(843) 266-1644

*s/ Brent Alan Gray*
Brent Alan Gray
Deputy Chief
Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(843) 870-8427

September 19, 2008
Charleston, South Carolina